UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JOSEPH BALIGA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:21-cv-00472-JRS-TAB |
| | ) | |
| MICHAEL SMITH, | ) | |
| HOLLY NEWELL, | ) | |
| LEA ELLLINGWOOD, | ) | |
| DEANNA PITTMAN, | ) | |
| DAVE MAGEE, | ) | |
| KEVIN GUMM, | ) | |
| MIKE HALL, | ) | |
| TOM HOPE, | ) | |
| NOAH JACKSON, | ) | |
| DALE PENNYCUFF, | ) | |
| ABI MEISER, | ) | |
| GREG SCHENKEL, | ) | |
| GEORGE PILLOW, | ) | |
| SUSIE LIGHTLE, | ) | |
| BILL MCCARTY, | ) | |
| | ) | |
| Defendants. | ) | |

**Order on Motion to Dismiss**

Veterinarian Joseph Baliga was licensed by the Indiana Horse Racing Commission to care for and treat racehorses at a local racetrack. After the Commission suspended that license due to allegations that Baliga administered a prohibited substance to a horse on race day—allegations that Baliga claims are false—Baliga brought suit. He alleges violations of due process and equal protection, abuse of process and/or malicious prosecution, and violation of Indiana's right to make a living. Defendants—commissioners and employees of the Indiana Horse

1

Racing Commission—moved to dismiss. (ECF No. 26.) For the following reasons, the Motion is granted in part and denied in part.

## Legal Standard

To survive a motion to dismiss, a complaint must contain a short and plain statement showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). A plaintiff is not required to include "detailed factual allegations," but the factual allegations must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When considering a motion to dismiss for failure to state a claim, courts "take all the factual allegations in the complaint as true," *id.*, and draw all reasonable inferences in the plaintiff's favor, *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016). Courts, however, need not accept the truth of mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

## Background

Baliga maintains that Defendants "began a campaign to illegally suspend and revoke" his license. (Am. Compl. ¶ 12, ECF No. 22.) The campaign began on October 1, 2016, when Defendants summarily suspended Baliga's license pending an administrative hearing. (*Id.* ¶ 13.) They did so after receiving a report that Baliga administered a prohibited substance to a horse on race day, along with a vial purportedly containing the substance, in violation of Indiana law and Commission

rules. (*Id.*); Ind. Code § 4-31-12-2(a); 71 Ind. Admin. Code 8-1-1.5. The horse's blood and urine were tested for prohibited substances, and the results were negative.[1] (Am. Compl. ¶ 14, ECF No. 22.) Nevertheless, Defendants "continued the suspension" of Baliga's license on October 31, 2016. (*Id.* ¶ 15.)

In accordance with Commission rules, 71 Ind. Admin. Code 10-3-20, Defendants then filed an administrative complaint against Baliga. (Am. Compl. ¶¶ 15–16, ECF No. 22.) Defendants later sought and obtained a default ruling against Baliga, making his suspension permanent. (*Id.* ¶ 18.) Defendants also reported to the veterinary licensing board that Baliga had engaged in a prohibited act, which resulted in the loss of his license to practice as a veterinarian generally, beyond just at the racetrack. (*Id.* ¶ 19.) After numerous procedural issues, the Indiana Court of Appeals issued an opinion holding that the Commission abused its discretion by finding Baliga in default and remanding for a hearing on the merits of the suspension. (*Id.* ¶ 20); *Baliga v. Ind. Horse Racing Comm'n*, 112 N.E.3d 731 (Ind. Ct. App. 2018). Following that opinion, in the summer of 2020—approximately four years after the initial suspension—Defendants dismissed all actions against Baliga with prejudice. (Am. Compl. ¶ 20, ECF No. 22.) Defendants did not reinstate Baliga's license at that

---

[1] Defendants state that the allegation that the tests came back "negative" defies logic, because the sample either revealed Lasix, which is a permissible substance, or it revealed any other substance, which would be prohibited. (Defs.' Reply 5–6, ECF No. 30.) They state that if the tests truly "exonerated" Baliga, he "could have plead[ed] those facts more specifically." (*Id.*) But a complaint need only include a short and plain statement showing the pleader is entitled to relief; detailed factual allegations are not required. And on review of a motion to dismiss, the Court takes the factual allegations in the complaint as true and does not resolve factual disputes. Accordingly, the Court accepts that the test results came back negative for prohibited substances.

time. (*Id.* ¶ 23.) So, in October 2020, Baliga applied for a new license. (*Id.* ¶ 24.) His application was effectively "ignored"—Defendants took no action on it, thereby precluding Baliga from challenging any denial of his application, although Defendants issued licenses to individuals who applied after Baliga. (*Id.* ¶¶ 26–27.) Baliga later applied for a license for 2021, which was approved, although the approval was not communicated to Baliga until Defendants noted the approval in court documents in April 2021. (*Id.* ¶¶ 31–35.)

## Discussion

Baliga brings claims for (1) violation of due process, (2) violation of equal protection, (3) abuse of process / malicious prosecution, and (4) violation of Indiana's right to make a living. Defendants respond that all Defendants are entitled to qualified immunity, and that the Commissioner Defendants—Schenkel, Pillow, Lightle, and McCarty—are entitled to absolute quasi-judicial immunity. (Defs.' Br. 6–8, ECF No. 27.)

**A. Absolute Quasi-Judicial Immunity**

Defendants contend that the Commissioners are entitled to absolute quasi-judicial immunity. The Supreme Court has held that the doctrine of absolute immunity accorded to judges and prosecutors is available to agency officials whose duties are analogous to those of judges and prosecutors. *Butz v. Economou*, 438 U.S. 478, 513–15 (1978). Whether immunity is available requires an "examination of the nature of the functions" the official was performing and consideration of various factors. *See Mother Goose Nursery Schs., Inc. v. Sendak*, 770 F.2d 668, 671 (7th Cir. 1985).

4

In their opening brief, Defendants recite these propositions, state that the Commissioners "are statutorily empowered to determine whether to initiate, continue, or dismiss administrative proceedings," then conclude that the Commissioners are immune from suit because Baliga "seeks monetary damages against the Commissioners based on claims that are inextricably tied to their determination to summarily suspend his license." (Defs.' Br. 7, ECF No. 27.) As Baliga points out, this is a conclusory statement that does not consider any of the factors cited in *Mother Goose*; does not cite any comparable case law; and does not sufficiently address his claim, which clearly encompasses more than just the initial decision to suspend his license. (*See* Am. Compl. ¶¶ 13–22, ECF No. 22.) "It is not this court's responsibility to research and construct the parties' arguments, and conclusory analysis will be construed as waiver." *Gross v. Town of Cicero*, 619 F.3d 697, 704 (7th Cir. 2010) (quoting *Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 631 (7th Cir. 2002)); *see also Carroll v. Lynch*, 698 F.3d 561, 568 (7th Cir. 2012) (citing *Dye v. United States*, 360 F.3d 744, 751 n.7 (7th Cir. 2004)) (arguments raised for the first time in a reply brief are waived).

Considering Defendants' "argument" on its merits is not any more fruitful. A subsequent decision to file an administrative complaint is not "inextricably tied" to the initial "determination to summarily suspend" Baliga's license. The former appears to be taken in a prosecutorial capacity while the latter in a judicial capacity, and each might be entitled to immunity, but not for the reason that they are "inextricably tied." Moreover, Defendants offer no authority to support their

5

contention that actions that are "inextricably tied" to actions that might qualify for immunity similarly qualify for immunity.

Further, Defendants never engage with the core of Baliga's allegations, which is that Defendants took all of these adverse actions while they knew the charges were false, as all of the test results were negative. It may be that immunity does not consider officials' subjective motives and knowledge, but the Court will not make that argument for Defendants. "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns v. Reed*, 500 U.S. 478, 486 (1991). At this stage, based on Defendants' perfunctory argument, the Court cannot conclude that the Commissioners are entitled to absolute immunity. With additional details at summary judgment, the Court may be able to make such a determination.

### B. Due Process

With regard to his due process claim, Baliga challenges two aspects of Defendants' handling of his license: (1) the suspension of his 2016 license, and (2) the failure to take any action on his 2020 license application. (Am. Compl. ¶¶ 41, 45, ECF No. 22; Pl.'s Resp. 8–9, ECF No. 29.) Defendants respond that they are entitled to qualified immunity and that there was no due process violation because Baliga lacked a protected property interest.

#### 1. License Suspension

The threshold question is whether Baliga had a property interest in the license. *See, e.g.*, *Rebirth Christian Acad. Daycare, Inc. v. Brizzi*, 835 F.3d 742, 746 (7th Cir.

2016) ("The first step [in a due-process claim] requires us to determine whether the plaintiff has been deprived of a protected interest . . . We therefore begin with the question whether the law clearly established that [the plaintiff] had a property interest . . . .").

Baliga claims he had a property interest, citing authority that "[g]overnment-issued licenses to perform work that allows the license holder to earn his livelihood is a form of government-created property protected by both the Fifth and Fourteenth Amendments." (Pl.'s Resp. 8, ECF No. 29 (citing *Simpson v. Brown Cnty.*, 860 F.3d 1001, 1006 (7th Cir. 2017)).)  But that is only the case if his license did not depend on the Commission's discretion.  *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010) (quoting *Brown v. City of Mich. City*, 462 F.3d 720, 729 (7th Cir. 2006)) ("A property interest of constitutional magnitude exists only when the state's discretion is 'clearly limited' such that the plaintiff cannot be denied the interest 'unless specific conditions are met.'"); *Brizzi*, 835 F.3d at 746 (emphasis added) (quoting *Cornelius v. LaCroix*, 838 F.2d 207, 210 (7th Cir. 1988)) ("[W]here state law gives people a benefit and creates a system of *nondiscretionary rules* governing revocation or renewal of that benefit, the recipients have a secure and durable property right, a legitimate claim of entitlement."); *Scott v. Vill. of Kewaskum*, 786 F.2d 338, 340 (7th Cir. 1986) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)) ("To the extent a request appeals to discretion rather than to rules, there is no property.").

It was undisputed in *Simpson* that the licensee had a property interest, as the license could only be revoked if the licensee demonstrated "inability or unwillingness

7

to comply" with the "rules and requirements" of the ordinance. *Simpson*, 860 F.3d at 1004, 1006. In another case, a daycare had a property interest in its certificate of registration, as the certificate could be revoked "only 'if the operator or an employee of the child care ministry violate[d]' the statutes or regulations governing registered ministries." *Brizzi*, 835 F.3d at 746–47 (citing Ind. Code § 12-17.2-6-9). In *Barry v. Barchi*, a horse trainer whose license was revoked had a property interest in the license because it could be suspended "only upon a satisfactory showing that his horse had been drugged and that he was at least negligent in failing to prevent the drugging;" the license could not have been "revoked or suspended at the discretion of the racing authorities." 443 U.S. 55, 64, 64 n.11 (1979).

The type of license Baliga had, however, could be suspended at the Commission's discretion. In pertinent part, the governing provisions state that the Commission "may" revoke or suspend a license if (1) the revocation or suspension is "in the public interest for the purpose of maintaining proper control over horse racing meetings," and (2) the licensee "engaged in conduct that is against the best interest of horse racing." Ind. Code § 4-31-6-6; 71 Ind. Admin. Code 5.5-1-14. The licensees in *Simpson* and *Brizzi* could have their licenses revoked only if they violated or demonstrated an unwillingness to comply with the rules delineated in the statute. But here, the Commission's discretion is not limited by the statute—the Commission could revoke or suspend a license if it found that a licensee engaged in conduct not in the best interest of horse racing generally, not just if the licensee had violated the statute.

8

Indeed, another judge in this district court has already held that § 4-31-6-6 contains "the language of discretion" and does not create a property interest. *See Daley v. Grajec*, No. 1:06-cv-1493-JDT-WTL, 2007 WL 2286132, at *9–10 (S.D. Ind. Aug. 7, 2007). *Daley* analogized to *Scott v. Village of Kewaskum*, 786 F.2d 338 (7th Cir. 1986), and *Bayview-Lofberg's, Inc. v. City of Milwaukee*, 905 F.2d 142 (7th Cir. 1990). In *Scott*, the Seventh Circuit held that a state statute permitting municipalities to grant liquor licenses "as the issuing municipal governing body deems proper" left the decision to the discretion of municipalities and did not create a property interest. 786 F.2d at 340; *see also id.* ("No one has an entitlement to be 'deemed proper;' no fact or set of facts creates a right to a license.").

The applicant in *Bayview-Lofberg's* argued that the city's ordinance implementing the liquor license statute analyzed in *Scott* eliminated any discretion. 905 F.2d at 144–45. The ordinance provided that the committee that would make the license decision could consider numerous factors, including the "appropriateness" of the location to be licensed, whether such a location would create "undesirable" neighborhood problems, whether there was an "overconcentration" of licensed establishments in the area, and "[a]ny other factors which reasonably relate to the public health, safety and welfare." *Id.* at 145 (quoting Mil. Code of Ordinances § 90-5-8(c-1)). The Seventh Circuit held that the ordinance did not establish substantive criteria which, "if met, automatically entitle an applicant to a liquor license;" therefore, there was no property interest. *Id.* "The words 'appropriateness,' 'undesirable,' and 'overconcentration,' as well as the general welfare clause in the

9

ordinance are evidence of the discretion vested" in the committee and call upon the committee "to review and exercise discretion and judgment." *Id.* at 146.

An ordinance that permits a committee to consider factors relating "to the public health, safety and welfare" is comparable to the statute here, which permits the Commission to suspend a license if it is "in the public interest" and the licensee "engaged in conduct that is against the best interest of horse racing." And just as "[n]o one has an entitlement to be 'deemed proper,'" *Scott*, 786 F.2d at 340, no one is entitled to a finding that they have not "engaged in conduct that is against the best interest of horse racing," Ind. Code § 4-31-6-6. Such language calls upon the Commission "to review and exercise discretion and judgment." *Bayview-Lofberg's*, 905 F.2d at 146.

While decisions by other district judges are not controlling, *Colby v. J.C. Penney Co., Inc.*, 811 F.2d 1119, 1124 (7th Cir. 1987), Baliga offers no persuasive reason to deviate from *Daley*, and he does not even mention *Scott* or *Bayview-Lofberg's*. He does attempt to distinguish *Daley* on the grounds that the plaintiff there was a license applicant, whereas Baliga already had a license. But the statute applies equally to applicants and licensees and does not distinguish between the two. Ind. Code § 4-31-6-6 ("The commission may refuse or deny a license application, revoke or suspend a license, or otherwise penalize a licensee . . . .").

Baliga notes that the Indiana Court of Appeals held that Baliga was entitled to a hearing on the merits. (Pl.'s Resp. 8, ECF No. 29); s*ee Baliga v. Ind. Horse Racing Comm'n*, 112 N.E.3d 731 (Ind. Ct. App. 2018). Baliga's argument on this point seems

10

to be that since the court held that a hearing was required, he must have a property interest—otherwise the court would not have ordered a hearing. But that misstates the court's holding. The court held that the Commission "abused [its] discretion by finding Dr. Baliga in default" on a procedural technicality after Baliga inadvertently missed a deadline while simultaneously challenging his suspension and the later-filed administrative complaint. *Id.* at 734, 736–37. In no way did the court imply that Baliga had a property interest protected by the Fourteenth Amendment.

In conclusion, because Baliga had no property interest in his license, Defendants' suspension of that license did not violate his due process rights.

   2. 2020 License Application

However, Baliga makes slightly different arguments as to his 2020 license application. First, he argues that the Commission "had no discretion to deny" his 2020 application, as it had approved his nearly identical application in prior years and subsequently approved his 2021 application. (Pl.'s Resp. 10, ECF No. 29.) But that does not change the terms of the statute, which vest the Commission with discretion. Just because the Commission approved Baliga's application at other points in time does not mean it lacked the discretion to do so in 2020. *See, e.g., Bd. of Regents v. Roth*, 408 U.S. 564, 577–78 (1972) (teacher did not have property interest in having his contract renewed because the terms of his contract did not provide for renewal and no regulations created any legitimate claim of entitlement to renewal).

Second, Baliga argues that the Commission lacked the discretion to ignore his application. He contends that the regulations restricted the actions the Commission

could take—the Commission could approve his application; request additional information and place his application in a pending status in the meantime, 71 Ind. Admin. Code 5-1-1(f); refuse his application, *id.* 5-1-12; or deny the application, *id.* 5-1-13; but it could not just let the application sit, thereby depriving Baliga of the chance to appeal if the license were refused or denied, *id.* 5-1-12; 5-1-13. In essence, Baliga appears to argue that he had a property interest in having his application assessed. (*See* Pl.'s Resp. 11, ECF No. 29 ("[N]either the IHRC Staff or Commissioners had discretion to simply run out the clock and deprive Dr. Baliga of the ability to challenge the failure to issue the license . . . .").) But again, all these regulations provide that the Commission "may" take various actions at its discretion; no regulation mandates that the Commission take any of those actions within a certain amount of time. *Cf. Brunson v. Murray*, 843 F.3d 698, 711 (7th Cir. 2016) (ordinance required mayor to review license renewal applications within 15 days). Therefore, Baliga had no property interest in having his application evaluated. *See Dandan v. Ashcroft*, 339 F.3d 567, 575 (7th Cir. 2003) (rejecting immigrant's argument that his due process rights were violated when his deportation proceedings were not initiated in a timely fashion; "[T]he decision when to commence deportation proceedings is within the discretion of the Attorney General and does not, therefore, involve a protected property or liberty interest.").

### C. Equal Protection

Baliga also alleges that Defendants violated his equal protection rights. The Equal Protection Clause protects individuals from "so called 'class-of-one'

discrimination in which a government arbitrarily and irrationally singles out one person for poor treatment." *Brunson*, 843 F.3d at 705 (quoting *Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012)). To state such a claim, Baliga must allege that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Geinosky*, 675 F.3d at 747 (quoting *Engquist v. Or. Dep't of Agric.*, 533 U.S. 591, 601 (2008)).

Defendants, apparently in an attempt to show that they had a rational basis for Baliga's treatment, state that Baliga's license was suspended not out of ill will, but because it was reported that he had injected a horse with a foreign substance on race day. (Defs.' Br. 9, ECF No. 27.) But Baliga's equal protection claim encompasses much more than his initial suspension; he describes it as "a campaign." (*See, e.g.*, Am. Compl. ¶ 12, ECF No. 22; Pl.'s Resp. 7–8, ECF No. 29.) Baliga alleges that the horse's blood and urine were tested for prohibited substances and came back negative, but Defendants refused to provide these results to him; instead, despite this knowledge, Defendants moved to continue the suspension of Baliga's license at a proceeding on October 31, 2016. (Am. Compl. ¶¶ 14–15, ECF No. 22.) Then, Defendants filed an administrative complaint against Baliga, initiating another disciplinary process. (*Id.* ¶ 16.) Defendants then had the horse's blood and urine tested again by a different laboratory, but the results came back the same: negative of prohibited substances. (*Id.* ¶ 17.) Nevertheless, despite this knowledge and knowledge that Baliga denied the accusations, Defendants sought and obtained a default ruling against Baliga, thereby making his suspension permanent. (*Id.* ¶ 18.)

They reported as much to the veterinary licensing board, resulting in Baliga losing his general veterinary license. (*Id.* ¶ 19.) The Indiana Court of Appeals later ruled that the Commission abused its discretion by finding Baliga in default and remanded "for a hearing on the merits;" but rather than have a hearing, the Commission simply dismissed all actions against Baliga, with prejudice. (*Id.* ¶ 20); *Baliga v. Ind. Horse Racing Comm'n*, 112 N.E.3d 731, 736–37 (Ind. Ct. App. 2018). Then, when Baliga applied for a new license in 2020, Defendants took no action on the application, although they approved applications that were submitted after Baliga's. (*Id.* ¶¶ 24–27.) So Baliga reapplied in 2021, sent the Commission a tort claims notice, and finally had his application approved in March 2021—although no one from the Commission communicated this approval to Baliga until the Commission noted the approval in an affidavit on April 19, 2021. (*Id.* ¶¶ 31–34.) Of course, Baliga alleges that no other licensed veterinarians were treated in this manner. (*Id.* ¶ 29.) There is no explanation as to why Defendants continued to pursue disciplinary action against Baliga despite the negative results or why they took no action on Baliga's 2020 application. Therefore, Baliga has adequately alleged an equal protection claim.

The Parties do not address the qualified immunity defense as it relates to Baliga's equal protection claim; the focus of the Parties' briefs is whether Baliga had a property interest and whether he adequately alleged animus. (*See, e.g.*, Defs.' Br. 8, ECF No. 27 ("Dr. Baliga's Amended Complaint alleges constitutional violations of the Due Process and Equal Protection Clauses, abuse of process and malicious prosecution, and Indiana's 'right to make a living.' Central to all of these claims is

14

Dr. Baliga's purported 'property interest' in his track vet license.").)  Therefore, the Court will not analyze the defense at this time.  *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) (citing *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991)) ("perfunctory and undeveloped" arguments, and arguments that are not supported by pertinent authority, are waived).  Similarly, Defendants do not discuss Baliga's abuse of process and/or malicious prosecution claim beyond denying that Baliga adequately alleged animus or malice, which the Court has already addressed.  Defendants did not address Baliga's right to make a living claim until their reply brief, so the Court will not dismiss that claim at this time.  *See Carroll v. Lynch*, 698 F.3d 561, 568 (7th Cir. 2012) (citing *Dye v. United States*, 360 F.3d 744, 751 n.7 (7th Cir. 2004)) (arguments raised for the first time in a reply brief are waived).

## Conclusion

Defendants' Motion to Dismiss, (ECF No. 26), is **granted in part and denied in part**.  It is granted as to Baliga's due process claim, which is **dismissed with prejudice**.  *See Loja v. Main St. Acquisition Corp.*, 906 F.3d 680, 684–85 (7th Cir. 2018) (district courts may deny leave to amend complaint when amendment would be futile).  It is denied as to Baliga's equal protection, malicious prosecution, and right to make a living claims.

**SO ORDERED.**

Date:  3/28/2022

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution to registered parties of record via CM/ECF.